Affirmed and Opinion filed September 30, 2003

















Affirmed and
Opinion filed September 30, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00356-CR

____________

 

ELIZABETH ANN MOBLEY, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

____________________________________________________

 

On Appeal from
the County Criminal Court at Law No. 7

Harris County, Texas

Trial Court
Cause No. 1099892

 

____________________________________________________

 

O P I N I O
N

            Elizabeth Ann Mobley was convicted
by a jury of obstructing a highway and fined by the trial court in the amount
of $600.  In two issues, appellant
challenges the legal sufficiency of the evidence supporting her
conviction.  We affirm.

                                                             I.  Background

            On
September 3, 2001, appellant
pulled up to a toll booth and handed Caroline Husen,
a toll collector with the Harris County Toll Road Authority, a $50 bill to pay
a $1.50 toll.  Pursuant to toll road
authority policy, Husen told appellant she could not
accept anything larger than a $20 bill and returned the $50 bill to her.  Husen informed
appellant she could give her an “IOU” allowing appellant to pay the toll by
mail within 48 hours at no extra charge. 
Appellant refused to sign the IOU. 
When Husen told appellant to pay the toll,
appellant again handed her the $50 bill. 
Husen then pointed to the posted notice which
stated, “NO BILLS LARGER THAN $20 WILL BE ACCEPTED.”  Appellant adamantly refused, however, to sign
the IOU or give Husen a smaller bill.  

            Husen
noticed traffic in her lane was starting to back up and told appellant she was
blocking traffic.  Husen’s
booth was the only full-service booth open on the north side of the tollway; the other booths required coins or vehicles with a
tag for prepaid tolls.  When Husen told appellant she was blocking traffic, appellant
replied that she did not care.  Husen then called her supervisor, Anthony Green, on the intercom.  When Green walked up, appellant still refused
to pay the toll.  Husen
had no more contact with appellant and opened another booth in an attempt to
relieve the traffic congestion.  

            Anthony Green, a plaza supervisor
for the toll road authority, again asked appellant to simply sign an
“IOU.”  Appellant again refused and said,
“It says on this form that my vehicle will be seized if I fail to pay.”  Green told appellant she only needed to worry
about a vehicle seizure if she did not pay. 
According to Green, if a person signs the “IOU” and then does not pay,
there is a processing fee of $5.00, plus the unpaid toll.  

            Green testified that traffic was
building up behind appellant and drivers were trying to go through the coin and
prepaid lanes.  Green finally gave up
trying to collect the toll and instructed appellant to drive on through, but
she refused.  Green told her that if she
did not move, he would have to call the constable.  Appellant then put her vehicle in park, and
Green called the constable.  Green then
began working another lane to try to get traffic moving again.

            When Harris County Deputy Constable Neilon arrived, he observed 20 to 30 vehicles backed up
behind a van with a boat stopped in the lane. 
After one of the toll plaza advisors explained the situation to him, Neilon asked appellant if there was a problem; appellant
replied there was no problem and she had not called him.  Neilon admitted
that the toll plaza personnel had called him, and appellant then suggested that
he ask the toll road employees what had happened.  Neilon explained to
appellant that he already had spoken to them, and he wanted to hear her side of
the story.  Appellant responded,
“Absolutely not.”  She told Neilon he did not have the right to be there.

            Neilon
asked for assistance from another unit for safety reasons.  When he asked appellant for identification,
she told him he had no right to ask her for identification.  Neilon informed
appellant that because she was operating a vehicle on a public roadway in Texas she had to
produce identification when it was requested. 
Appellant responded that she was not operating a vehicle because it was
in park.  

            Two other patrol units arrived.  After appellant refused Neilon’s
repeated requests to produce identification, he asked appellant to step out of
her car.  Appellant refused.  Neilon again asked
appellant to step out of her vehicle. 
When appellant refused a second time, Neilon
opened the door of appellant’s vehicle and asked her to step out.  Neilon asked
appellant to take off her seat belt; when she refused, Neilon
reached in and unlatched the seat belt. 
Appellant still refused to step out of the vehicle.  

            Neilon and
another deputy then “physically took her out of the vehicle.”  Appellant “went limp” and became “a dead
weight.”  As the deputies were pulling
appellant from the vehicle, the passenger in the front seat leaned over and
grabbed appellant’s arms and briefly pulled back.  Neilon and another
deputy eventually placed appellant in the rear of his patrol car.

                                                    II.  Standard of Review

            When
reviewing the legal sufficiency of the evidence, we must view the evidence in
the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319 (1979); Wilson v. State, 7 S.W.3d
136, 141 (Tex. Crim. App. 1999).  In conducting this review, we do not engage
in a second evaluation of the weight and credibility of the evidence, but only
ensure that the jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim.
App. 1993).  

                       III.  Unreasonably Inconvenient and
Hazardous

            Appellant claims the State failed to
prove that she (1) rendered passage through the tollway
unreasonably inconvenient and hazardous, or (2) had been informed that Green
was a toll road authority employee who was authorized to control the use of the
tollway.  

            Section 42.03 of the Texas Penal
Code addresses the obstruction of a highway or other passageway:

(a) A person commits an offense if, without legal privilege or
authority, he intentionally, knowingly, or recklessly:

(1) obstructs a highway, street, sidewalk, railway, waterway, elevator,
aisle, hallway, entrance, or exit to which the public or a substantial group of
the public has access, or any other place used for the passage of persons,
vehicles, or conveyances, regardless of the means of creating the obstruction
and whether the obstruction arises from his acts alone or from his acts and the
acts of others; or

(2) disobeys a reasonable request or order to move issued by a person
the actor knows to be or is informed is a peace officer, a fireman, or a person
with authority to control the use of the premises:

(A) to prevent obstruction of a highway or any
of those areas mentioned in Subdivision (1); or

(B) to maintain public safety by dispersing
those gathered in dangerous proximity to a fire, riot, or other hazard.

(b) For
purposes of this section, “obstruct” means to render impassable or to render
passage unreasonably inconvenient or hazardous.

Tex. Pen. Code Ann § 42.03 (Vernon 2003).  

            Appellant complains that although
the State introduced evidence that traffic behind her vehicle had started to
back up and that traffic become potentially dangerous, there is no evidence
that the traffic had become unreasonably inconvenient or unreasonably
hazardous. 

            Appellant’s vehicle was stopped in a
lane at a tollbooth.  Green testified
that traffic was starting to build up in the full-service lane behind appellant
and drivers were pulling into the coin and prepaid lanes because they could not
get through the full-service lane.  Green
testified that he used some tokens to process vehicles through the coin lane to
get traffic moving again and another full-service lane was opened. 

            When Neilon
arrived, there were approximately 20 to 30 cars stacked up behind
appellant.  Neilon
testified that vehicles behind appellant “were turning into oncoming traffic”
to get across to other lanes.  Neilon explained that to get across the other lanes,
drivers had to make a turn “and kind of make a little ‘z’ turn to get over to
that lane.  And when you have a line of
vehicles, it’s not always so orderly to do. 
So, it was a little chaotic until they got it.”  Moreover, Neilon testified
the normal speed on the toll road is 60 to 80 miles per hour and the lane for
prepaid tolls is designed so that drivers do not have to slow down when passing
through.  Neilon
further testified:

Q.  Now, were the drivers of the
vehicles behind the defendant, would you characterize the situation they were
having to their change of driving situation as a dangerous one at that point?

                                                                   *        *       
*

A.  Yes, sir. 
That when they have to come over -- anytime you’re having to come from a
stop, like I stated, and change over into two lanes over and you have traffic
topping a hill, which is right there into the toll plaza, it’s -- and at night
with limited visibility, it does cause for, you know, some shortened reaction
time.  

            “Obstruct” means to render passage
unreasonably inconvenient or hazardous. 
Tex. Pen.
Code Ann. § 42.03(b).


            Here, appellant blocked the only
open full-service lane of the toll plaza causing cars to cross over to other
lanes with fast-moving traffic in order to pass through and forcing the toll
road authority to open another lane.  We
hold this falls within the definition of obstruction by rendering passage of
the toll road unreasonably inconvenient or hazardous.  See,
e.g., Haye v. State, 634 S.W.2d 313, 315 (Tex. Crim. App. 1982) (holding that individual merely standing
in middle of sidewalk, forcing pedestrian to walk around in mud is sufficient
to support finding that obstruction of sidewalk rendered passage unreasonably
inconvenient); Lauderback v. State, 789 S.W.2d 343, 346–47 (Tex.
App.—Fort Worth 1990, writ ref’d) (holding that where
appellant blocked one lane of traffic with wheelchair causing cars to stop
behind her and wait to move over into next lane in order to pass her clearly
rendered passage unreasonably inconvenient or hazardous); Brightbill v. State, 734 S.W.2d 733, 734 (Tex. App.—Amarillo 1987, no writ)
(holding that where defendant parked vehicle in ditch where ditch was being
graded, forced the grader out of ditch, and instructed crew to leave was
sufficient to establish that defendant acted intentionally to render passage
unreasonably inconvenient or hazardous for road grader employed in legitimate
enterprise).  The evidence was sufficient
for a rational trier of fact to have found beyond a
reasonable doubt that appellant is guilty of obstructing a highway.  Appellant’s first issue is overruled. 

                                     IV.  Authority to
Control Tollway

            In her second issue, appellant
complains that the evidence is not legally sufficient to support her conviction
based on the second paragraph of the information alleging that Green was an
employee of the toll road authority and had authority to control the use of the
tollway.  The
record does not reflect that Green identified himself to appellant as an
employee of the toll road authority with authority to control the use of the tollway.  However,
the circumstances show that appellant was informed that Green was a toll road
authority employee with authority to control the use of the tollway.  

            When appellant refused to sign the
“IOU,” she asked to see a supervisor. 
When Green came over after Husen called him,
he stepped into the booth and Husen no longer had any
dealings with appellant.  Green explained
to appellant the consequences of not paying the IOU.  When traffic was building up behind
appellant’s vehicle, Green told appellant to just go through.  When appellant refused to move, he told her
he would call the constable.  Between the
time that Green called the constables and the constables arrived, Green worked
the coins lane, using tokens to allow traffic to pass through.  Husen testified
that the uniforms for all toll plaza personnel are the same.  The evidence was sufficient for a rational trier of fact to have found beyond a reasonable doubt that
appellant was informed that Green was a toll road authority employee with
authority to control use of the tollway.  Appellant’s second issue is overruled.  

            Accordingly, the judgment of the
trial court is affirmed.  

 

                                                                        /s/        J. Harvey Hudson

                                                                                    Justice

 

Judgment rendered and Opinion filed
September 30, 2003.

Panel consists of Justices Hudson,
Fowler, and Frost.

Do Not Publish — Tex.
R. App. P. 47.2(b).